developed by the evidence in the record before us.

It should be observed that these are not cases in which Ryan was a common carrier and Donahue and Longcor were passengers for hire, 'and where, in that relation, the latter might be absolved from the duty of safeguarding themselves. On the contrary Ryan was merely giving Donahue and Longcor a lift homeward. Thus all were united in a common purpose and had a common object in view. The opportunity to see and hear, except as affected by the difference between the front and rear seats, was equal. That there is a duty resting on a gratuitous passenger or guest to exercise ordinary care for his own protection, where he has an opportunity to do so, is the law of each of the three states comprising this circuit, Mittelsdorfer v. West Jersey Co., 77 N. J. Law, 702, 73 A. 540; Dean v. Pa. R. Co., 129 Pa. 514, 18 A. 718, 6 L. R. A. 143, 15 Am. St. Rep. 733; Farley v. Wilmington R. Co., 3 Penn. (Del.) 581, 52 A. 543; and it is the federal law of the circuit as announced by this court in Brommer v. Pennsylvania R. Co., 179 F. 577, 581, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924, and Phillips v. Davis (C. C. A.) 3 F.(2d) 798. Such being the law, the true question in the cases at bar is not whether Ryan's negligence should be imputed to the other occupants of the car but whether they, or either of them, omitted that care which in the circumstances they were bound to take for their own protection. We agree with the learned trial court that the duty to exercise care for themselves devolved upon Donahue and Longcor, the other occupants of the car, as well as upon Ryan, the driver, and that failure to perform that duty would constitute contributory negligence on their part. But, as in the case of Ryan, the duty upon the others arose only when, according to the character of the obstructions, its performance was possible. And so, as in the case of the driver, it was for the jury to determine whether in the circumstances there was any time and any place where, had they stopped, looked and listened, the occupants could have performed the positive rule of duty which the law placed upon them, and, if not, whether in the circumstances they exercised the ordinary care otherwise required of them. Until the jury has determined the fact, when the evidence is conflicting, they cannot be held guilty of contributory negligence.

The judgments below are reversed and new trials awarded.

## GREEN et ux. v. UNITED STATES
### (two cases).

### COHN v. SAME.

(Circuit Court of Appeals, Sixth Circuit. July 3, 1925.)

Nos. 4329–4331.

**1. Conspiracy ⬤⇒47 — Evidence necessary to establish stated.**

Conspiracy may be established by proof of concert of action in the commission of the illegal act, or of other facts and circumstances from which the natural inference arises that the unlawful overt act was in furtherance of a common design, intent, and purpose of the alleged conspirators, but the facts proven must be of such a character that, in connection with all explanations given, the jury could rightly think them inconsistent with innocence.

**2. Conspiracy ⬤⇒47—Conviction of violations of Prohibition Act held not supported by evidence.**

The conviction of two out of three defendants, charged in separate counts with conspiracy, with unlawful possession of whisky, with unlawful transportation, and with maintaining a common nuisance, held not supported by any substantial evidence as to either count.

**3. Intoxicating liquors ⬤⇒143—Transportation of whisky does not constitute "nuisance."**

Mere transportation of whisky does not constitute a "nuisance," under National Prohibition Act, tit. 2, § 21 (Comp. St. Ann. Supp. 1923, § 10138½jj).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Nuisance.]

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Criminal prosecutions by the United States against Charles Green and wife, and Rubi Cohn. Judgment of conviction and defendants Green and wife and Cohn separately bring error. Reversed and remanded, with directions.

The plaintiffs in error were all convicted upon four separate counts in an indictment; the first count charging conspiracy to violate the National Prohibition Law (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), the second count unlawful possession of five gallons of whisky, the third count unlawful transportation, and the fourth count maintaining a common nuisance.

The government offered evidence tending to prove: That upon the night of July 19, 1922, at Toledo, Ohio, Rubi Cohn was driving an automobile that belonged to Charles Green, a plumber in that city. That Mrs. Charles Green was riding in the front seat

of this automobile, holding a sleeping child upon her lap. That Cohn drove the automobile into an alley, stopped there, left the headlight burning, and took from the car a five-gallon jug of "moonshine" whisky. This jug was wrapped with burlap, but he carried it by the handle to some point ahead of the car, where he was arrested by federal prohibition agents and local city officers. That at the time he was arrested others of the officers walked back to the car, found Mrs. Green in the front seat, and in the back part of the car found a two-gallon jug, uncorked, tipped over on its side, and still about half full of "moonshine" whisky, a large portion of which had run out upon the floor of the car. Several of the officers testified that they made diligent search for the cork of this two-gallon jug, but were unable to find it. Another testified that it was his recollection that the cork was found in the bed of the car. Mrs. Green denied all knowledge that whisky of any kind was being transported in the car, but claimed that Cohn had borrowed the car from her, after her husband had left home that evening, to deliver a package, the contents of which were unknown to her, and that she had gone along with him for the ride.

Green, who is engaged in the plumbing business and uses the car in that business, was not present. Prior to the war Cohn was regularly employed by Green, but since the war he has worked for him only occasionally. A search of Green's home resulted in finding a half gallon of whisky containing a quantity of Maraschino cherries. Captain Segrist, who was in charge of the officers who made the arrest, took possession of this whisky, but at the time of the trial it had wholly disappeared, and Segrist was sojourning in Canada. The other officers testified that they knew from the smell that the jugs taken from Cohn contained "moonshine" whisky. The liquor found in Green's home was red whisky. Some of the witnesses drank a part of this. Green did not reach his home until about 12:30 that night. He stated that he had not entered into any arrangement, agreement, or conspiracy with Cohn to possess or transport intoxicating liquor, that he had not loaned the car to Cohn, did not know that Cohn was using it for any purpose, and that he had nothing whatever to do with the transaction.

Henry A. Behrendt, of Detroit Mich., for plaintiffs in error.

D. L. Sears, Asst. U. S. Atty., of Toledo, Ohio (A. E. Bernsteen, U. S. Atty., of Cleveland, Ohio, on the brief), for the United States.

Before DENISON and DONAHUE, Circuit Judges, and HICKENLOOPER, District Judge.

PER CURIAM. [1, 2] Conspiracy may be established by proof of concert of action in the commission of the illegal act, or other facts and circumstances, from which the natural inference arises that the unlawful overt act was in furtherance of a common design, intent, and purpose of the alleged conspirators (Williams v. U. S. [C .C. A. 6], 3 F.[2d] 933), yet the facts proven must be of such a character that, in connection with all explanations given, the jury could rightly think them inconsistent with innocence. Green was not present at the time Mrs. Green and Cohn were arrested. No witness testified that Green had entered into a conspiracy with his wife and Cohn to sell, possess, or transport intoxicating liquor in violation of law, and no oral evidence was offered on the part of of the government tending to establish concert of action, or other facts and circumstances from which such natural inference might be drawn, other than that he was the husband of Mrs. Green and the owner of the automobile in which this intoxicating liquor was transported. It follows that the conclusion that Green authorized the use of his automobile by Cohn that evening for any purpose is a mere conjecture, not sustained by any substantial evidence, and hence cannot be accepted as a fact proven in the case, from which the further inference may be drawn that the automobile was furnished by Green in furtherance of a conspiracy, or with knowledge, that it was to be used for the unlawful transportation of intoxicating liquour.

It is said however, that the further fact that a small quantity of intoxicating liquor was found in the Green home tends to prove this conspiracy. With this contention we cannot agree. It appears from the evidence that this was a wholly different kind of whisky intended for use in the home, and not for sale or transportation, and, as stated in the charge of the court, Cohn had no connection therewith.

The conclusion that Green was not a party to the conspiracy charged in this indictment materially affects the natural inferences to be drawn from the facts actually proven as to Mrs. Green. There is no proof substantially tending to show a preconcert of plan with Cohn, constituting participation in the

conspiracy, or that the liquor in the automobile was at any time in her possession. Possession connotes control, and transportation presupposes possession. Supplying means of transportation may constitute participation therein, but mere presence in the automobile (the only fact shown as to Mrs. Green), we do not think, is such a substantial circumstance, under all the facts of this specific case, as could reasonably be considered as overcoming the presumption of innocence. Nor is it shown that Mrs. Green overturned the jug in the automobile. In order to predicate guilty knowledge by Mrs. Green upon this additional circumstance, and thus to infer participation by her, such circumstance must be proved, and not be mere conjecture unsupported by substantial evidence. There would therefore seem to be no substantial evidence of Mrs. Green's actual participation in the possession charged by count 2, or in the transportation charged by count 3, of the indictment.

It also appears that count 2 of this indictment is directed to the possession of whisky found and seized by the officer at the time Cohn and Mrs. Green were arrested, and not to any whisky found in the Green home. In respect to this count the court erred in its charge to the jury that the second count of the indictment "charges these two people with unlawful possession—just Green and his wife, and, so far as this case goes, the evidence on that count applies equally to husband and wife. * * * There is no defense, as the court sees, so far as the two Greens are concerned, to the second count, and you should return a verdict of guilty of possession on the second count against them." The first overt act charged in the first count of the indictment did charge possession by Green and his wife, but the second count of the indictment charged Green, Mrs. Green, and Cohn with unlawful possession.

The jury found all three guilty upon this count. The verdict of guilty as to Green and wife upon this second count must necessarily have been based upon the theory that Green and his wife were parties to this conspiracy and were participating in the transportation. It was error for the court to treat the whisky admittedly found in the Green home as being a demonstration of guilt under this count, which was not intended to allege such possession, and the point was sufficiently reserved by specific exceptions at the close of the charge.

[3] The only evidence offered, tending to prove that these defendants, or either of them, were guilty of maintaining a nuisance under the fourth count of the indictment, was the fact that this "moonshine" whisky was transported in this automobile upon this one occasion. No evidence whatever was offered tending to prove that liquor was illegally bartered or sold from this automobile. Mere transportation does not constitute a nuisance under section 21, title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½jj). Ash v. U. S. (C. C. A.) 299 F. 277; Hattner v. U. S. (C. C. A.) 293 F. 381; U. S. v. Emmons et al. (D. C.) 3 F.(2d) 503; Miller v. U. S. (C. C. A.) 300 F. 529, 537; Reynolds v. U. S. (C. C. A.) 282 F. 258. The motion for a directed verdict should have been sustained as to Green and Mrs. Green on all counts of this indictment, and as to Rubi Cohn on the first and fourth counts.

For the reasons stated, the judgment of the trial court is reversed as to Charles Green and Mrs. Charles Green on all four counts of the indictment, and reversed as to Rubi Cohn on the first and fourth counts of the indictment, and the cause is remanded to the district court for the resentence of Rubi Cohn on either the second or third count of the indictment as the government may elect, but not on both (Reynolds v. U. S. [C. C. A.] 280 F. 1; Miller v. U. S. [C. C. A.] 300 F. 529), and for new trial of Charles Green, Mrs. Charles Green, and Rubi Cohn on the first count of the indictment, and new trial of Charles Green and Mrs. Charles Green on the second and third counts of the indictment.

---

### PANDOLFO v. BIDDLE, Warden of Penitentiary.

(Circuit Court of Appeals, Eighth Circuit. September 17, 1925.)

No. 7014.

Criminal law ⬤⟿42 — Immunity not granted by Federal Trade Commission Act to one appearing and testifying voluntarily.

Federal Trade Commission Act, § 9 (Comp. St. § 8836i), grants immunity only to one testifying or producing evidence "before the commission in obedience to a subpœna issued by it," and so not to one appearing and testifying, not in obedience to subpœna, but voluntarily.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Habeas corpus proceeding by Samuel C. Pandolfo against W. F. Biddle, Warden of